I,YELVERTON, Judge-
This is a personal injury case brought by the parents of a high school girl. The child was a passenger in a car driven by her grandmother. They were hit by another driver. Liability is not an issue. The issues relate to the awards. The trial judge awarded Monica $6,000.00 in general damages. He disallowed $1,627.35 in medical bills, mostly therapy, because the bills were not sent to defense counsel until two days before trial instead of seven in accordance with the court’s scheduling order. He limited costs for medical expert witness fees to $50 for a general practitioner and $100 each for the two orthopaedic surgeons, although the doctors charged the plaintiffs a lot more than that. Plaintiffs appealed complaining of error in the awards for general damages, medical expenses, and expert witness fees.
For the following reasons, we affirm the award of general damages. We find an abuse of discretion, given the circumstances of this case, in the failure to award all of the medical bills, and we render judgment for an additional $1,627.35 in medical expenses. We find an abuse of discretion in the' unreasonably low assessment of medical expert fees and increase those to $250 for the general practitioner and $500 each for the orthopaedists. We also make an oversight amendment to the judgment to add a provision for legal interest from judicial demand.
GENERAL DAMAGES
Monica was not a healthy child to start with. At the age of 15 she was six feet tall and weighed 268 pounds. The accident happened in ■ 1996. From the accident scene, she was taken to the emergency room by ambulance. She had a cervical strain and back pain. There was muscle spasm in her neck. Her general practitioner, Dr. H.L. Gardiner, treated her with medication. She still had symptoms three months after the accident, so he referred her to Dr. Michael Holland, an orthopae-dist. Dr. ^Holland prescribed anti-inflammatory medication, physical therapy, and strengthening exercises. During his. treatment, Dr. Holland recommended weight reduction explaining that for a patient with back problems, weight reduction is “just always a good thing to recommend.” When she did not get better, Monica returned to Dr. Gardiner who referred her to another orthopaedic surgeon, Dr. Roland Miller. This was about nine, months after the accident. Dr. Miller prescribed more physical therapy and, because she was having trouble carrying her books at school, he recommended home schooling. By May 1998, which was about a year and a half after the accident, Dr. Miller believed that'she was substantially recovered.
At trial, Monica testified that she was still having good days and bad days and that she was still home schooled. The trial court awarded $6,000 in general damages.
Arguing that this was abusively low, the plaintiffs emphasized the following excerpt from the reasons for judgment:
“The Court finds that the plaintiff was injured by the accident, but she did fail to mitigate the damages and she had other problems, her obesity and other *413 things that contributed to her problems which she went to the doctor for.”
In addition to the weight problem, the record contains indications that Monica suffered from asthma and before the accident she had been home schooled due to what her mother described as a “mental breakdown.” We agree with the plaintiffs’ argument that the record reveals very little evidence that Monica failed to mitigate the damages. However, we cannot tell from the trial court’s reasons for'judgment whether her inability to achieve a weight loss played a truly significant part in his decision to hold the damages down to $6,000. It may have been that he was simply commenting on the defendants’ persistent attempts during trial to show that Monica’s problems were not accident-related.
13While most of us on this panel consider that $6,000 is low, considering the unanimous medical and lay support for Monica’s protracted pain and discomfort over a period of about a year and a half, we recognize that the now well-established standard of appellate review of general damages is that the trial court’s discretion in this area is vast. Adhering to this standard, we find no abuse of discretion in the award of general damages.
MEDICAL BILLS
We find an abuse o@f discretion in the failure of the trial court to award an additional $1,627.35 in medical expenses. Before trial, the defendants had already paid some medical expenses; in its judgment, the trial court awarded an additional $2,868.03 more as “past due medical expenses.” It rejected the proffered additional amount of $1,627.35 based on an objection by the defendants that those bills had not been timely produced. The untimeliness of those bills was that they were due for exchange seven days before trial and they were not produced until two days before trial.
Most of these bills, $1,321, were for physical therapy done at the Physical Therapy Clinic of Rayne. The physical therapy was ordered by the two orthopae-dists and discussed in their depositions. The depositions were taken well before trial. There were two bills, totaling $251.28, relating to an emergency room visit in mid-1998 at American Legion Hospital. This emergency room visit and the reason for it were also discussed by the orthopaedists in their depositions. The remainder of the rejected medical expenses was an item of $55.07 owed to the Medicine Shoppe.
Up until a week before trial, the relationship between the two attorneys in this contest was manifestly one of good faith and good manners. For example, the case |4was twice fixed for trial and twice continued at the behest of defense counsel on account of conflicts; counsel for plaintiffs consented to these continuances. It was actually continued a third time, again without objection, when counsel for the defendant had a conflict on the scheduled Tuesday date, and it had to be put off until the next day, Wednesday. While he was guilty of undue delay, there was no evidence, and' none alleged, that Monica’s counsel was withholding these medical bills to create a trap or a surprise or for any other improper reason.
The routine scheduling order in place in this trial court required an exchange of exhibits seven days prior to trial. The trial in this case began on Wednesday, March 24, 1999. The exhibits should have been delivered by March 17, one week earlier. A written list identifying the provider and the amount of the medical expenses was delivered with the pre-trial brief on Friday, March 19. Evidently, counsel for the defendants did not read the brief and look at the list of exhibits until Sunday night. Counsel for defendants told the court that on Monday, March 22, she faxed a message to counsel for plaintiff saying “I want those specials. We’re headed for trial.” He responded by faxing them that same day. At the trial, she complained that the last one on the list, *414 the one owed to the Medicine Shoppe for $55.07, was practically illegible, but offered no other explanation of how she was prejudiced in her preparation for trial. During the colloquy over the objection to the admission the trial judge said, “I don’t know enough about the case to be able to make the call myself of whether she’s being prejudiced or not.” But almost in the next breath he then ruled that the exhibits would not be admitted because of the violation of the scheduling order.
Counsel’s tardiness in not producing the actual invoices on time is inexcusable. The requirements of the pre-trial scheduling order were certainly not unreasonable, | sand counsel was aware of the medical expenses because they had been incurred months before trial. We recognize the trial - court’s authority in ’enforcing its scheduling order embodied in La. Code Civ.P. art. 1551. The trial court in the present case imposed the sanction provided by Sub-Section C of that article, which referenced La.Code Civ.P. art. 1471(2), by prohibiting Monica from introducing these medical expenses in evidence because her attorney had violated the pre-trial scheduling order. We believe that the imposition of this sanction was too harsh a result given the circumstances of this case.
The appropriateness of penalties for disobedience of or disregard for court orders relating to pre-trial procedures is discussed by our Supreme Court in the recent case of Benware v. Means, 99-1410 (La.1/19/2000); 752 So.2d 841. One important consideration to determine the appropriateness of the sanction is whether the misconduct was by the attorney or the client, or both. In the present case, Monica and her parents had nothing to do with the five-day delay in producing copies of these medical expenses to defense counsel. Other considerations are the presence or absence of prejudice to the opposing party’s preparation of the case, and the nature and persistency of the misconduct that constitutes the violation. In the present case, the trial court found no prejudice, and we find none. Also, in the present case, the five-day delay was the only aberration in an otherwise cleanly and honestly conducted trial preparation between two reputable and professional people. The aberration, while inexcusable, had no serious consequences. The only good accomplished by the trial court’s ruling was that Monica’s attorney’s tardiness was recognized and punished. The harm that results is that Monica’s wholly legitimate claim for these medical expenses goes un-redressed. We find that the sanction was | (¡inappropriate. We reverse this portion of the judgment and order that the judgment be increased to include these medical expenses.
EXPERT WITNESS FEES
Rather than calling the doctors to court as witnesses, the plaintiffs used the depositions of the two orthopaedic surgeons who treated Monica, Drs. Holland and Miller, and her general practitioner, Dr. Gardiner. In an exhibit listing costs incurred, the plaintiffs showed that Dr. Holland charged $700, while Dr. Miller charged $600, and Dr. Gardiner was listed as charging $250. The trial court awarded $100 for each of the orthopaedic surgeons and $50 for the deposition of the general practitioner. Responding to the argument that the doctors’ charges were what the plaintiffs had to pay for the depositions and that these were proper elements of costs, the trial court pointed to the relative brevity of the depositions, then added, “But to me that’s—a point to settle the case because most of the time I find the defense attorney is willing to give more than I am.” The trial court properly considered “the value and the amount of time it was and that sort of thing.”
The fixing of expert witness fees turns on the particular facts and circumstances present in each case. Este’ v. State Farm Ins. Companies, 96-99 (La.App. 3 Cir. 7/10/96); 676 So.2d 850. A trial court is given discretion in fixing the quantum of these fees and, therefore, an *415 appellate court will not disturb such an award absent a serious abuse of that discretion. Johnson v. Manuel, 95-913 (La.App. 3 Cir. 1/31/96); 670 So.2d 273, unit denied, 96-0540 (La.4/19/96); 671 So.2d 919.
Our review of the depositions at issue in this assignment of error reveals that the trial court abused its discretion by awarding inadequate fees. Accordingly, we |7increase the awards to $500 each for Drs. Holland and Miller, and $250 for Dr. Gard-iner.
CONCLUSION
The appellants have made the unopposed request that we amend the judgment to include legal interest from date of judicial demand, a provision which inadvertently does not appear in the judgment of the lower court. Because of the mandatory language of La.R.S. 13:4203, we amend and render judgment ordering legal interest from judicial demand.
Accordingly, for the reasons given above, we amend the judgment of the trial court to increase the award of medical expenses from $2,368.03 to $3,995.38; we amend to increase the medical witness fees of Dr. H.L. Gardiner from $50 to $250; of Dr. Michael R. Holland from $100 to $500; and of Dr. Roland Miller from $100 to $500. We amend the judgment to bear legal interest from date of judicial demand. In all other respects, the judgment is affirmed. Costs of this appeal are assessed to the defendants.
AFFIRMED AS AMENDED.
AMY, J., dissents in part and assigns reasons.