934 So.2d 263 (2006)
Sharon A. GERACI
v.
Thomas J. BYRNE, Jr. and Financial Indemnity Company.
No. 06-CA-58.
Court of Appeal of Louisiana, Fifth Circuit.
June 28, 2006.
*264 George M. Cotton, Baton Rouge, Louisiana, for Plaintiff/Appellee.
James L. Donovan, Jr., Donovan & Lawler, Metairie, Louisiana, for Defendant/Appellant.
*265 Panel composed of Judges THOMAS F. DALEY, MARION F. EDWARDS, and SUSAN M. CHEHARDY.
MARION F. EDWARDS, Judge.
Defendant/appellant, Allstate Insurance Company ("Allstate"), appeals from a judgment of the Twenty-Fourth Judicial District Court in favor of the plaintiff/appellee, Sharon A. Geraci ("Geraci"), awarding her $5,000 in damages, $5,000 for arbitrary and capricious failure to pay a claim, and $14,063.37 in attorney's fees. On appeal, Allstate argues that the court erred in finding it arbitrary and capricious in ruling that Geraci was entitled to attorney's fees, and, in the alternative, that such fees were excessive.
Geraci filed a Petition For Damages against Thomas J. Byrne Jr. ("Byrne") and Financial Insurance Company, alleging injuries as a result of a February 25, 2002 automobile accident that occurred when she was struck from the rear by a vehicle driven by Byrne. On May 12, 2003, a supplemental and amending petition was filed, adding Allstate as Geraci's uninsured motorist (UM) insurer. Following discovery, Geraci filed a second, amending petition on May 5, 2005, alleging that she notified Allstate of her injury on February 27, 2002 and that her attorney notified the insurer that she claimed UM benefits. Geraci further alleged that the only offer made by Allstate was to reimburse her for court costs and that neither a settlement nor any costs have been tendered. Consequently, Geraci claimed that Allstate was arbitrary and capricious, and she claimed penalties and attorney's fees.
Geraci settled her claims with Byrne and his insurer, expressly reserving her right to proceed against Allstate.
At trial, Geraci testified that, after the accident in February 2002, she went to the emergency room at Ochsner Hospital for treatment. Because of headaches suffered following the accident, she consulted Dr. Strub, a neurologist, who gave her pain medication and a muscle relaxer. In March 2002, she visited Dr. Walter Brent for injuries and pain in her neck, back, and shoulders. Dr. Brent recommended physical therapy, which she was not able to attend regularly because of her job. It was about a year before she could resume her normal activities. She had a slip and fall in April of 2002 but did not injure herself severely. Geraci had previously been treated for migraine headaches and depression. She saw her gynecologist in July for "female problems" and depression. In August 2002, someone backed into her car in a parking lot, and she was shaken up and injured.
Dr. Walter Brent, qualified as an expert in orthopedic medicine, testified that Geraci consulted him following the accident and that she had objective signs of cervical and lumbar injury. The initial visit was on March 13, 2002. He ordered physical therapy, rest, and medications. She also received a cortisone injection. In April, Geraci reported she had fallen and injured her hand, but Dr. Brent did not feel that this had anything to do with the exacerbation of the pain in Geraci's neck. At that time, Geraci continued to have neck pain and tense muscles, although the tenseness was reduced. She had pain but a good range of motion. In November 2002, she visited again after having a slip and fall accident at work. Because Geraci discontinued her physical therapy in July 2002, Dr. Brent assumed that the injury from the accident had been resolved by that point.
Deborah Skorlich, a claims adjuster for Allstate, testified that, after ascertaining whether coverage is proper, she evaluates a claim after looking at the liability aspects, then at the damages. After an adjuster *266 evaluates it with a recommendation, the claim goes to an evaluation consultant, who reviews it and makes a recommendation. In the present case, the consultant agreed with Skorlich's determination. In January 2005, Skorlich evaluated the claim. It was her opinion that the $10,000 amount received by Geraci from the tortfeasor was sufficient compensation for her injuries, although Allstate did make an offer for "cost of defense." She had all the information, including medical records from Ochsner Hospital, when she made the evaluation. Skorlich looked at the police report, which reflected no injury was reported at the scene and that there was minor damage to Geraci's vehicle. Geraci had gone to the emergency room, had treatment, and received physical therapy. Therapy was "a little sporadic" in the month of May when she made only one visit. The last therapy treatment was July 15, 2002, before a subsequent accident in which Geraci sustained property damage and injury. In November 2002, Geraci had a slip and fall and more therapy. Skorlich evaluated the subject damage as being a cervical soft-tissue injury of five months duration. In evaluating claims, Skorlich testified that she must take each person as you find them relative to their condition, type of treatment received and recommended, and any subsequent injuries. She does not look at case law when evaluating soft-tissue injuries. Dr. Brent's testimony did not change her opinion. According to her testimony, Geraci had $4,055.50 in medical bills at the time of trial, but she did not consider any medicals beyond July 15, 2002 because of the subsequent accident. The $10,000 amount that Geraci received from the tortfeasor was "a little bit higher" than Skorlich would have evaluated it.
Insofar as the claim for time lost at work, Skorlich reviewed the records, which did not show that Geraci took any vacation time or sick leave but, rather, that she received regular pay. Skorlich believed that the first notice of the accident given Allstate was in July 2003 when the lawsuit was filed, and she was unaware of any prior notice. By January 2005, when Allstate filed its answer to the petition, Skorlich agreed that Geraci was not at fault in the accident.
Prior to issuing its written judgment, the trial court found in open court that, although some of the depression and stress described by Geraci existed prior to the accident, her claim was basically treated with very little respect and "very little thought went into it, obviously." The testimony of the adjuster "indicated a very arbitrary way of viewing this case, a very subjective way of viewing this case." The court found that a demand letter submitted by Geraci over a year before Allstate's evaluation fairly represented the facts.
Allstate's file was admitted into evidence. Included in the medical information in Allstate's file was a letter dated July 23, 2002 from Geraci's gynecologist, Dr. David Curole, in which the doctor stated that a combination of stress from the accident and medications given her for pain probably caused amenorrhea from which Geraci was then suffering.
Under LSA-R.S. 22:1220, an insurer has a good faith affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured. An insurer who breaches these duties is liable for any damages sustained as a result of the breach, which, according to the statute, may consist of failing to pay the amount of any claim due any insured within sixty days after receipt of satisfactory proof of loss, when such failure is arbitrary, capricious, or without probable cause. Under the present version of LSA-R.S. 22:658, an insurer shall pay the *267 amount of any claim due any insured within thirty days after receipt of satisfactory proofs of loss from the insured or any party in interest, and failure to make such payment within thirty days after receipt of such proofs and demand therefor when the failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of twenty-five percent damages on the amount found to be due from the insurer to the insured, or one thousand dollars, whichever is greater.
Both LSA-R.S. 22:658 and R.S. 22:1220 impose upon the claimant an obligation to produce a satisfactory proof of loss. "Satisfactory proof of loss" in a claim pursuant to UM coverage is receipt by the insurer of "sufficient facts which fully apprise the insurer that (1) the owner or operator of the other vehicle involved in the accident was uninsured or under insured; (2) that he [or she] was at fault; (3) that such fault gave rise to damages; and (4) establish the extent of those damages."[1] The determination of whether an insurer acted in an arbitrary and capricious manner or in bad faith in its refusal to fairly and quickly settle its insured's claim is a question of fact which will be reviewed on appeal under the manifest error standard of review.[2]
Allstate does not argue the amount of the penalty awarded to Geraci. Allstate does contend, however, that LSA-R.S. 22:658 was amended on June 27, 2003, eliminating the attorney's fee provisions, and that Geraci is not entitled to such fees. Legislative Act 2003, No. 790, § 1 was approved in the 2003 legislature, eliminating attorney's fees for arbitrary refusal to settle under LSA-R.S. 22:658. According to the act itself, and La. Const., art. III, § 19, the amendment was not effective until August 15, 2003.
In the present case, the evidence reveals that Allstate was notified of Geraci's demand for UM damages no later than April 2003, prior to filing of the First Amending Petition in May 2003. Allstate's file contains a letter on that date from Geraci's counsel with a copy of the First Amended Petition to be filed, asking for a settlement. Other documents include a letter from Geraci's attorney dated July 28, 2003 indicating that Geraci had reported the accident to Allstate on February 27, 2002, that a new medical release was being forwarded, and that all medical bills and reports related to the loss were attached. Skorlich testified that she became aware of the claim in July 2003. No settlement offer was ever forthcoming. Under these facts, we find the cause of action for arbitrary and capricious refusal to settle arose prior to August 15, 2003.
As to the finding that Allstate was arbitrary and capricious, in addition to the above documents, Allstate's file contained a May 14, 2004 letter from Geraci's attorney to Allstate with updated patient records. Also on this date is a signed HIPAA compliant release form; a May 17, 2004 letter from Geraci's attorney to Allstate's counsel indicating the demand and outlining the injuries suffered by Geraci; a June 7, 2004 letter from Allstate's attorney to Skorlich, attaching a medical authorization signed July 29, 2003; a copy of the $10,000 draft to Geraci from Financial Indemnity; a patient ledger indicating treatment for *268 Geraci from March 13, 2002 through July 15, 2002; and a copy of a demand letter. Skorlich wrote a letter dated June 8, 2004 to Allstate's counsel, indicating that medical bills in her possession at that point totaled $3,970.50. Based on the information on file, Skorlich did not feel that the claim exceeded the $10,000 settlement. Further, Skorlich was awaiting the new HIPAA release and requesting more medical records.
Allstate had a medical release signed by Geraci in July 2003, and, in September 2003, answers to interrogatories indicated that Allstate had the names of each of Geraci's physicians and places of treatment, nearly a year before Geraci filed the action for arbitrary refusal to settle. Allstate made no offer of settlement other than the cost of defense. At that time of her evaluation, Skorlich had all the medical information upon which the court ultimately relied, as outlined in Geraci's letter to Allstate's counsel, before June 2004. Skorlich testified that $6,000 for pain and suffering was more than she would have evaluated Geraci's claim. The trial court awarded Geraci an additional $5,000 for general damages, and Allstate does not appeal the determination by the trial court that Geraci's damages totaled $15,000. Even applying the rule that penal statutes must be strictly construed, under all these circumstances, we find no error in the determination by the trial court that Allstate was arbitrary and capricious in refusing to make any offer in settlement of the claim.
Finally, Allstate argues that the attorney's fees are excessive. We note that Allstate did not attempt to traverse attorney's fees prior to judgment.
The trial court has much discretion in fixing the award of attorney's fees and this award will not be modified on appeal absent an abuse of discretion. The proper standard for assessing attorney's fees under LSA-R.S. 22:658 should be based on the services needed to effect recovery, the degree of professional skill and ability exercised, the volume of work performed, the time devoted to the case, and the amount in controversy.[3] Although there was a contingency fee contract between counsel and Geraci, such is not the only basis upon which a court is to determine "reasonable attorney's fees" as that term is used in LSA-R.S. 22:658.[4] Rather, the contract is one of the factors used in determining reasonableness.[5]
In the present case, Geraci's counsel charged $150 per hour, a reasonable hourly fee. The fee schedule submitted indicated that 83.10 hours were expended on the case, which, with regard to the Allstate claim, took over two years to come to trial. The statement of attorney's fees does not appear to include unjustified figures. Under these circumstances, we find no abuse of discretion in the award of attorney fees.
For the foregoing reasons, the judgment is affirmed.
AFFIRMED.
DALEY, J., dissents with reasons.
I dissent from the majority's opinion because I do not believe that Allstate Insurance Company's conduct in its evaluation *269 of this claim was arbitrary and capricious. An insurer's refusal to pay cannot be arbitrary and capricious when there are serious issues regarding the plaintiff's right to recover. Sutton v. Oncale, 99-967 (La.App. 5 Cir. 3/29/00), 765 So.2d 1072. In the present case, we are called on to decide whether Allstate had a reasonable basis to contest plaintiff's claim that her damages exceeded the $10,000.00 limits of the tortfeasor's liability policy. The medical records indicate that plaintiff visited three physicians as a result of injuries sustained in this accident. She visited an orthopedist on March 13, 2002, March 20, 2002, and April 15, 2002; a neurologist on March 13, 2002; and a had one visit with a gynecologist for cessation of her menstrual periods as a result of stress due to the accident. She attended physical therapy from March 13, 2002 until July 15, 2002 and again from April 2, 2003 until April 14, 2003. Additionally, plaintiff submitted medical expenses to Allstate that were later conceded to be not related to her treatment for injuries from the accident. Given the duration of treatment and the submission of medical expenses not related to the accident, I find that Allstate had a reasonable basis to consider plaintiff's claim to be not more than the $10,000.00 she received from the tortfeasor's insurer. Allstate's adjuster testified that Allstate evaluated the claim at $10,000.00 based on the assumption that about $1,000.00 per month would be paid for the soft tissue injury. This amounted to a general damage award of $6,000.00. A review of the general damage awards for a soft tissue injury similar to that suffered by plaintiff indicates that Allstate's valuation of plaintiff's claim was not unreasonable. See: Minkler v. Chumley, 32,558 (La.App. 2 Cir. 12/8/99), 747 So.2d 720 ($8,000.00 awarded to plaintiff who had soft tissue injuries to his neck and underwent physical therapy for eight months); Bourque v. Allstate Ins. Co., 99-1260 (La.App. 3 Cir. 3/22/00), 760 So.2d 411 (affirmed $6,000.00 general damage award to plaintiff who had soft tissue injuries to neck and back and was treated for over one year); and Mosley v. Methodist Health Sys. Foundation, 99-3116 (La.App. 4 Cir. 11/15/00), 776 So.2d 21 ($7,000.00 general damages awarded to plaintiff who had lumbar strain and was discharged eight months after the accident).
Based on the above factors, I respectfully dissent from the majority and would reverse the trial court's award of penalties and attorney fees.
NOTES
[1] McDill v. Utica Mut. Ins. Co., 475 So.2d 1085, 1089 (La.1985); Hackman v. S. Farm Bureau Ins. Co., 629 So.2d 531 (La.App. 5 Cir.1993), writ denied, 94-0421 (La.4/4/94), 635 So.2d 1109.
[2] Urrate v. Argonaut Great Cent. Ins. Co., 04-256 (La.App. 5 Cir. 8/31/04), 881 So.2d 787.
[3] Sanderford v. Lombard, 96-1171 (La.App. 4 Cir. 12/11/96), 685 So.2d 1162.
[4] See, e.g., Baghramain v. MFA Mut. Ins. Co., 315 So.2d 849 (La.App. 3 Cir.1975), writ denied, 320 So.2d 207, 209 (La.1975).
[5] State Bar Articles of Incorporation, art. 16, Rules of Prof. Conduct, Rule 1.5(e); See also, Khaled v. Windham, 94-2171 (La.App. 1 Cir. 6/23/95), 657 So.2d 672, writ dismissed, 95-1914 (La.11/1/95), 661 So.2d 1369.