STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

10-63

RENIA B. HUDSON

VERSUS

AIG NATIONAL INSURANCE

COMPANY, ET AL.

**********

APPEAL FROM THE
TWELFTH JUDICIAL DISTRICT COURT
PARISH OF AVOYELLES, NO. 2009-2986-B
HONORABLE WILLIAM J. BENNETT, DISTRICT JUDGE

**********

JOHN D. SAUNDERS
JUDGE

**********

Court composed of John D. Saunders, Jimmie C. Peters, and Elizabeth A. Pickett, Judges.

AFFIRMED.

Daniel G. Brenner
Bolen, Parker, Brenner & Lee, Ltd.
P. O. Box 11590
Alexandria, LA 71315-1590
(318) 445-8236
Counsel for Defendant Appellant:
AIG National Insurance Co.

**Jerold Edward Knoll Jr. Esq.**
**Attorney at Law**
**P.O. Box 426**
**Marksville, LA 71351**
**(318) 253-6200**
**Counsel for Plaintiff Appellee:**
**Renia B. Hudson**

**Mary Helen Johnson**
**Johnson Law Firm, LLC**
**P. O. Box 468**
**Marksville, LA 71351**
**(318) 253-0935**
**Counsel for Plaintiff Appellee:**
**Renia B. Hudson**

**SAUNDERS, Judge.**

This case involves an automobile accident where the insured filed suit against her insurer under her uninsured/underinsured policy not only for the balance of her policy, but also for penalties that were eventually awarded under La.R.S. 22:1973. The trial court found that the insurer had acted arbitrarily, capriciously, and without probably cause in denying the insured's claim. As such, under La.R.S. 22:1973(B)(5), the trial court awarded the insured an amount double her damages as a penalty to the insurer for its actions.

The insurer filed this appeal, alleging four assignments of error. We find no credence in any of these assignments and, therefore, affirm the trial court. Further, we assess all costs of this appeal to the insurer.

**FACTS AND PROCEDURAL HISTORY:**

This matter arises out of an automobile accident that occurred on March 20, 2008, involving Renia B. Hudson (Hudson), an AIG National Insurance Company (AIG) insured, operating a 2004 Mazda Miata and Kasarah Sayer, who was driving a 1994 GMC pick-up truck. The pick-up truck was owned by Timmy Sayer and insured by State Farm Mutual Insurance Company (State Farm). The accident occurred when Hudson was traveling on East Tunica Drive in Marksville, Louisiana, and the Sayer vehicle pulled out of a gas station, striking Hudson's vehicle broadside. The accident occurred solely as a result of the fault of Kasarah Sayer.

The State Farm policy provided a $10,000.00/$20,000.00 liability limit. Hudson filed a claim with State Farm on that policy and eventually signed a release in favor of State Farm, Timmy Sayer, and Kasarah Sayer in exchange for the policy limit of $10,000.00.

At the time of the accident, Hudson had a policy of uninsured/underinsured

motorist (UM) insurance coverage issued by AIG for a limit of $25,000.00. On December 9, 2008, Hudson sent a demand letter to AIG for that limit. Attached to the demand letter was Hudson's medical profile, a certificate of coverage from State Farm stating that the limits on Sayer's policy of insurance were "10/20/25," an affidavit of coverage from Timmy Sayer stating that he had "no other liability insurance . . . which would provide insurance benefits to [Hudson] for damages sustained as a result of the collision on 03-20-08," and a release executed by Hudson in favor of Timmy Sayer, Kasarah Sayer, and State Farm in exchange for the policy limits of ten thousand dollars.

Hudson's medical profile included diagnostic tests taken of her cervical spine at three different time frames following three different automobile accidents. The first was taken in 2000, the second in 2005, and the third following the pertinent accident, in 2008. The objective findings of those tests were that following the 2005 accident, Hudson showed no abnormalities related to her cervical spine, whereas, after the 2008 accident, she had disc herniations at C4-5 and C5-6 and a disc bulge at C3-4.

AIG refused to pay under the policy, claiming that it first needed to receive a recorded statement from Hudson. Suit was filed against AIG on January 9, 2009, alleging that Hudson was entitled to not only her damages, but also to penalties from AIG under La.R.S. 22:1220 and 22:658.[1]

Thereafter, Hudson's deposition was taken by AIG on May 14, 2009. On May 21, 2009, AIG made an unconditional tender of $11,744.00. Hudson rejected the tender, and AIG placed those funds in the registry of the court.

---

[1]Louisiana Revised Statutes 22:658 and 22:1220 are currently cited as La.R.S. 22:1892 and 22:1973 respectively.

A bench trial was held on July 19, 2009. The trial court issued reasons for ruling and judgment on September 15, 2009. In its judgment, the trial court awarded Hudson $25,000.00 from AIG under the terms of the UM policy. Further, the trial court awarded Hudson $50,000.00 in penalties under La.R.S. 22:1973(B)(5) due to its finding that Hudson was an extremely credible witness, that AIG's adjuster, Jeff Chighizola, testified in a very coy and evasive manner, and that AIG had acted in an arbitrary and capricious manner without just cause. AIG has appealed this judgment, alleging the following four assignments of error:

**ASSIGNMENTS OF ERROR:**

1.  The trial court committed manifest error in failing to grant AIG's motion for involuntary dismissal where no prima facie case was proven by Hudson to satisfy the strict and narrowly construed requirements of the penal statutes La.R.S. 22:1892 and La.R.S. 22:1973.

2.  The trial court erred by granting penalties under La.R.S. 22:1973 where Hudson filed suit alleging bad faith prior to any actual occurrence of what Hudson alleges to be "bad faith" under the statute.

3.  The trial court committed manifest error in granting La.R.S. 22:1973 damages and penalties where the evidence does not support a finding of insurer bad faith.

4.  The trial court erred in calculating the La.R.S. 22:1973 and other "damages" allegedly incurred by AIG's alleged bad faith actions.

**ASSIGNMENT OF ERROR NUMBER ONE:**

In its first assignment of error, AIG contends that the trial court committed manifest error in failing to grant its motion for involuntary dismissal where no prima facie case was proven by Hudson to satisfy the strict and narrowly construed requirements of the penal statutes La.R.S. 22:1892 and La.R.S. 22:1973. For the following reason, we find no basis for this assignment.

Louisiana Code of Civil Procedure Article 1672(B) (emphasis added) states:

3

In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. *The court* may then determine the facts and render judgment against the plaintiff and in favor of the moving party or *may decline to render any judgment until the close of all the evidence.*

A trial court's determination on a party's motion *granting* an involuntary dismissal is reviewed using the manifest error standard of review. *Gauthier v. City of New Iberia*, 06-341 (La.App. 3 Cir. 9/27/06), 940 So.2d 915. Thus, for this court to reverse a trial court's *granting* of a motion for involuntary dismissal, we must find that there lacks a factual basis for its determination, i.e., that the determination is manifestly erroneous, clearly wrong, or unreasonable. *See Stobart v. State, through DOTD*, 617 So.2d 880 (La.1993).

In the case before us, it is AIG, the party that made the motion for involuntary dismissal that is assigning as error the *denial* of the motion. Our review of the explicit language of applicable article is that the trial court "may decline to render any judgment until the close of all the evidence." La.Code Civ.P. art. 1672(B). Thus, there is nothing for this court to review, as the denial of a motion for involuntary dismissal is purely discretionary. *See Townsend v. Delchamps, Inc.*, 94-1511 (La.App. 1 Cir. 10/6/95), 671 So.2d 513, *writ denied*, 95-2648 (La. 1/12/96), 667 So.2d 522; *Parker v. Winn-Dixie La., Inc.*, 615 So.2d 378 (La.App. 5 Cir. 1993); *Riser v. Am. Med. Int'l, Inc.*, 620 So.2d 372 (La.App. 5 Cir. 1993); *Blount v. Peabody Shoreline Geophysical*, 439 So.2d 565 (La.App. 1 Cir. 1983). Accordingly, we find no merit to this assignment of error.

**ASSIGNMENT OF ERROR NUMBER TWO:**

In its second assignment of error, AIG asserts that the trial court erred by

granting penalties under La.R.S. 22:1973 where Hudson filed suit alleging bad faith prior to any actual occurrence of what Hudson alleges to be "bad faith" under the statute. We find that AIG's assertion is without merit.

Louisiana Revised Statutes 22:1973 states, in pertinent part, the following:

> A. An insurer, including but not limited to a foreign line and surplus line insurer, owes to his insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both. Any insurer who breaches these duties shall be liable for any damages sustained as a result of the breach.

> B. Any one of the following acts, if knowingly committed or performed by an insurer, constitutes a breach of the insurer's duties imposed in Subsection A:

> . . . .

> (5) Failing to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause.

> . . . .

> C. In addition to any general or special damages to which a claimant is entitled for breach of the imposed duty, the claimant may be awarded penalties assessed against the insurer in an amount not to exceed two times the damages sustained or five thousand dollars, whichever is greater. Such penalties, if awarded, shall not be used by the insurer in computing either past or prospective loss experience for the purpose of setting rates or making rate filings.

AIG argues that the trial court erred in granting penalties to Hudson because she filed suit on January 7, 2009, within sixty days of December 9, 2008, the date that the trial court determined AIG had received "satisfactory proof of loss" under La.R.S. 22:1973. AIG's argument posits a question that is legal in nature, i.e. does the sixty-day time period under La.R.S. 22:1973(B)(5) have to toll prior to a plaintiff filing a suit alleging entitlement to penalties under that statute.

5

> Appellate review of questions of law is simply to determine whether the trial court was legally correct or legally incorrect. If the trial court's decision was based on its erroneous interpretation or application of the law, rather than a valid exercise of discretion, such incorrect decision is not entitled to deference by the reviewing court.

*Domingue v. Bodin*, 08-62, pp. 2 (La.App. 3 Cir. 11/5/08), 996 So.2d 654, 657 (quoting *Citgo Petroleum Corp. v. Frantz*, 03-88, pp.3-4 (La.App. 3 Cir. 6/403), 847 So.2d 734, *writ denied*, 03-1911 (La. 10/31/03), 857 So.2d 484 (citations omitted)).

"When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature." La.Civ.Code art. 9.

We find the language of La.R.S. 22:1973(B)(5) to be both unambiguous and clear. That explicit language does not require the sixty-day period to have run prior to a plaintiff filing suit in order for that plaintiff to recover the statutory penalties. Further, rejecting AIG's proposed prerequisite leads to no absurd consequences. It is common practice by plaintiffs to file suit and request compensation for legal rights that are more likely than not to manifest themselves in the future. For example, a plaintiff can properly file suit for future medical expenses, loss of enjoyment of life, or loss of consortium. As such, we find no merit in AIG's argument.

**ASSIGNMENT OF ERROR NUMBER THREE:**

In its third assignment of error, AIG states that the trial court committed manifest error in granting La.R.S. 22:1973 damages and penalties where the evidence does not support a finding of insurer bad faith.

The trial court found that AIG's actions in adjusting Hudson's claim violated La.R.S. 22:1973(B)(5) which states that an insurer can be responsible for penalties if it fails "to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when

6

such failure is arbitrary, capricious, or without probable cause." Whether a refusal to pay under La.R.S. 22:1973(B)(5) is "arbitrary, capricious, or without probable cause" and warrants granting an insured penalties takes into account what facts are known by the insurer at the time of its action. *Reed v. State Farm Mut. Auto. Ins. Co.*, 03-107 (La. 10/21/03), 857 So.2d 1012. This determination is a factual issue, therefore, the applicable standard of review is that of manifest error. *Id*. As such, we will look to the record to determine whether it supports the trial court's decision to award Hudson penalties.

The trial court found that "satisfactory proof of loss" was received by AIG on December 9, 2008. AIG contends that this finding was in error. AIG bases its contention that there was not "satisfactory proof of loss" on December 9, 2008, on the fact that Hudson had not yet given it her recorded statement as required by the contract between them. While AIG is correct that the language of the policy between it and Hudson necessitated that Hudson give AIG her recorded statement, Hudson's lack of cooperation in this regard does not prohibit her from proving that AIG received "satisfactory proof of loss" without that statement.

Rather, our supreme court was quite explicit as to what "satisfactory proof of loss" entails in *Reed*, 857 So.2d at 1022 (quoting *McDill v. Utica Mutual Insurance Co.*, 475 So.2d 1085, 1089 (La.1985)(alteration in original)) wherein it stated:

> "Satisfactory proof of loss" in a claim pursuant to UM coverage is receipt by the insurer of "sufficient facts which fully apprise the insurer that (1) the owner or operator of the other vehicle involved in the accident was uninsured or under insured; (2) that he [or she] was at fault; (3) that such fault gave rise to damages; and (4) establish the extent of those damages."

On December 9, 2008, counsel for Hudson sent counsel for AIG a demand letter with attached documents. Those attached documents included Hudson's

7

medical profile, a certificate of coverage from State Farm stating that the limits on Sayer's policy of insurance were "10/20/25," an affidavit of coverage from Timmy Sayer stating that he had "no other liability insurance . . . which would provide insurance benefits to [Hudson] for damages sustained as a result of the collision on 03-20-08," and a release executed by Hudson in favor of Timmy Sayer, Kasarah Sayer, and State Farm in exchange for the policy limits of ten thousand dollars.

Our review of these documents support the trial court's finding that the December 9, 2008 letter established "satisfactory proof of loss" under the criteria stated in *Reed*. State Farm's certificate of insurance, Timmy Sayer's affidavit, and the release establish the first criterium that "the owner or operator of the other vehicle involved in the accident was uninsured or under insured." *Id.*

The police report submitted as Plaintiff's exhibit number 3 was readily available to AIG prior to December 9, 2008. It listed the Sayer vehicle as "Vehicle 1" and Hudson's vehicle as "Vehicle 2." The report includes the following:

> Vehicle 1 stated that she was exiting out of the Shell Station parking lot to head west on Tunica Dr. when a vehicle stopped traffic in the far right lane to let her in and didn't see Vehicle 2 coming from the far left land and hit the passenger back side of Vehicle 2.

> Vehicle 2 stated that she was traveling straight ahead on Tunica Dr. about to approach the light [at] Tunica and Acton Rd. and Vehicle 1 came from out [of] the parking lot of the Shell [Station] and struck the back passenger side of her vehicle.

Further, the police report listed a violation by the driver of the Sayer vehicle as "failure to yield" and listed her condition as "inattentive." The police reported no deficiencies by Hudson. This report establishes that AIG had knowledge of the second criterium under *Reed*, that the driver of the other vehicle was at fault.

Finally, the trial court determined that the final two criteria under *McDill*, i.e.,

8

that Sayer's "fault gave rise to damages" and that Hudson can "establish the extent of those damages," were met by AIG's possession of Hudson's complete medical profile. We find this determination reasonable.

Hudson's medical profile sent to AIG on December 9, 2008, included the results of diagnostic tests conducted in 2000, 2005, and 2008, all of which focused on Hudson's cervical area of her spine. The diagnostic test performed in 2000 was done so after Hudson was in an automobile accident. It showed a "very small focal left C5-6 disc bulge." The diagnostic test performed in 2005 was also done after Hudson was in automobile accident. It showed "no acute osseous abnormality in the cervical spine" and "calcification along the anterior annular margin and/or longitudinal ligaments at C4-5 and C5-6, consistent with mild degenerative disease." Finally, the diagnostic test performed in 2008, after the accident relevant to the case before us, revealed "disc herniations at C4-5 and C5-6" and "mild posterior bulging of the annulus fibrosis at C3-4." Moreover, a nerve conduction study was done after the 2008 accident and it revealed "right median motor neuropathy at the wrist."

These objective findings of increased damage to Hudson's cervical area of her spine can reasonably be found, as the trial court did, to establish that Sayer's "fault gave rise to damages" and that Hudson can "establish the extent of those damages." *Id*. At its most minor, the 2008 accident can objectively be seen to have caused a new disc herniation at C4-5, an exacerbation of Hudson's bulging disc at C5-6 into a disc herniation, and a new bulging disc at C3-4. Given that the four criteria in *Reed* can reasonably be found to have been met, the trial court's determination that AIG had "satisfactory proof of loss" on December 9, 2008, is not manifestly erroneous.

It is not disputed that AIG did not make an unconditional tender to Hudson

9

until May 21, 2009. This is well in excess of the threshold "within sixty days after receipt of satisfactory proof of loss" as stated in La.R.S. 22:1973(B)(5). The language of La.R.S. 22:1973(C) is as follows: "[i]n addition to any general or special damages to which a claimant is entitled for breach of the imposed duty, the claimant may be awarded penalties assessed against the insurer in an amount not to exceed two times the damages sustained or five thousand dollars, whichever is greater." This is exactly what the trial court did in this case, and we find no error in awarding Hudson penalties under La.R.S. 22:1973 once it was established that AIG failed to pay Hudson within sixty days of receiving "satisfactory proof of loss."

**ASSIGNMENT OF ERROR NUMBER FOUR:**

In its final assignment of error, AIG argues that the trial court erred in calculating the La.R.S. 22:1973 and other "damages" allegedly incurred by AIG's alleged bad faith actions. We find this argument is completely without merit.

Our supreme court, in *Stobart*, 617 So.2d at 882, stated the following:

> A court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." *Rosell v. ESCO*, 549 So.2d 840 (La.1989). This court has announced a two-part test for the reversal of a factfinder's determinations:
>
> 1) The appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and
>
> 2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous).

AIG's first argument in this assignment of error is that the trial court committed manifest error in awarding Hudson loss of earnings for $7,080.56. AIG bases its argument on two statements made by Hudson. The first is where she testified that she could have gone back to work at the casino if she had obtained a release from her

10

treating physician. The second is where Hudson testified that she was working on her grocery business during the time she sought lost wages.

Regarding whether she could return to work, AIG points to the following testimony of Hudson to assert that the trial court was manifestly erroneous in awarding Hudson lost wages:

Q    Okay. Let me ask you about your testimony that you didn't return to the casino because you had been terminated. Now first of all we have established that you did not ask Dr. Goux for a letter [on] June 4th where you were applying for your new business license. You didn't go to Dr. Goux and ask him for a letter to allow you to go back to work?

A    Not at that point no.

Q    Okay. And you are aware that since you were on leave at that time you could have gone back to work with the casino. They would have taken you back had you gotten a release from Dr. Goux?

A    If it was before my ninety days [were] up yes.

Q    June 4th was?

A    But I couldn't go back then.

Q    All right. Cause [sic] you were unable to do anything at all?

A    And not at that point no.

Our reading of this testimony is quite different than that of AIG. In brief, AIG asserts that "Hudson stated she could have gone back to work at the casino if she had obtained a release from Dr. Goux." While this statement, in a vacuum, is accurate, as Hudson said that *had* she asked Dr. Goux for a release, she *could* have gone back to work at that time, it is a gross misrepresentation of her testimony. Hudson clearly states in the next few lines that she did not get a release from Dr. Goux at that time because she could not have done anything at work had she gone back. Thus, this argument made by AIG falls woefully short of demonstrating how the trial court was

11

manifestly erroneous.

Next, AIG argues that the trial court was manifestly erroneous in awarding Hudson past lost wages from March 5, 2008, to June 23, 2008, due to her opening a fruit stand/grocery store during that time period. Again, we find that AIG's argument lacks merit.

While it is true that Hudson did attempt to open a fruit stand/grocery store during the time that she claimed lost wages, Hudson did testify that the business was open for less than one month and that she received no wages from its operation. AIG points out that if Hudson was able to fill out the paperwork necessary to open the business and was able to carry crates of produce in operating the business, she was able to go back to work. AIG even had a witness, Michael Lopez, testify that he had seen Hudson carrying crates while operating her business and that those crates looked very heavy. However, Hudson testified that Dr. Goux had placed a lifting restriction for her of ten pounds and that neither the paperwork or any of the boxes or crates she was seen carrying were over ten pounds.

In its reasons for judgment, the trial court stated that "Renia Hudson presented to the Court as a witness and testified in an extremely calm, credible and impressive manner." Given that the trial court was in a superior position to this court regarding this issue, we must give deference to its findings.

"[W]here two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong." *Stobart*, 617 So.2d at 883. This is exactly the situation presented on this issue, and the trial court chose to give credence to Hudson's testimony. Accordingly, we find no manifest error by the trial court in awarding Hudson past lost wages.

Finally, AIG argues that the trial court erroneously applied La.R.S. 22:1973. It bases it argument on an assertion that the clear language of La.R.S. 22:1973 is such that Hudson had to prove that she suffered actual damages as a result its failure to tender within sixty days in order to receive penalties. AIG highlights and unabashedly cites language from *Sultana Corp. v. Jewelers Mutual Insurance Co.*, 01-2059 (La.App. 1 Cir. 12/31/02), 837 So.2d 134, in an attempt to bolster its position. However, our supreme court, in *Sultana Corp. v. Jewelers Mutual Insurance Co.*, 03-360 (La. 12/3/03), 860 So.2d 1112, reversed our first circuit and found exactly the opposite to be the law in this state., i.e. that proof of actual damages suffered due to the delay in tendering payment to an insured is ***not*** a prerequisite to the recovery of penalties for an insurer's breach of statutory duties. AIG's brief does include a citation to, but no quotation from, our supreme court's opinion in *Sultana Corp.* Thus, we find AIG's argument is meritless and disingenuous.

**CONCLUSION:**

AIG raised four assignments of error. They are: that the trial court committed manifest error in failing to grant AIG's motion for involuntary dismissal, that he trial court erred by granting penalties under La.R.S. 22:1973 where Hudson filed suit alleging bad faith prior to any actual occurrence of what Hudson alleges to be "bad faith" under the statute, that the trial court committed manifest error in granting La.R.S. 22:1973 damages and penalties where the evidence does not support a finding of insurer bad faith, and that the trial court erred in calculating the La.R.S. 22:1973 and other "damages" allegedly incurred by AIG's alleged bad faith actions.

We found no merit to any of these assignments. Thus, we affirm the trial court's judgment, and assess all costs of this appeal to AIG.

13

**AFFIRMED.**