NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

16-1018

EWELL J. GASPARD, ET UX.

VERSUS

USAA CASUALTY INS. CO., ET AL.

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
ALEXANDRIA CITY COURT
PARISH OF RAPIDES, NO. 134,511
HONORABLE RICHARD ERIC STARLING, JR., CITY COURT JUDGE

\*\*\*\*\*\*\*\*\*\*

BILLY HOWARD EZELL
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, Billy Howard Ezell, and Van H. Kyzar, Judges.

AFFIRMED AS AMENDED.

**Eugene Paul Cicardo, Jr.**
**P. O. Box 1128**
**Alexandria, LA 71309**
**(318) 445-2097**
**COUNSEL FOR PLAINTIFFS/APPELLEE:**
**Ewell J. Gaspard**
**LeeAnn Gaspard**

**Michael Royce Sistrunk**
**Kyle P. Kirsch**
**E. Madison Walker**
**McCranie, Sistrunk, Anzelmo, Hardy, McDaniel & Welch, LLC**
**909 Poydras Street, Suite 1000**
**New Orleans, LA 70112**
**(504) 831-0946**
**COUNSEL FOR DEFENDANT/APPELLANT:**
**Axis Surplus Insurance Company**

**EZELL, Judge.**

Axis Surplus Insurance Company appeals a default judgment rendered in the Alexandria City Court pursuant to La.Code Civ.P. art. 4904(A) in favor of LeeAnn Gaspard. Axis claims that the default judgment was in error because the amount of the judgment was in excess of the jurisdictional limits of the trial court. Axis also claims that the judgment was based on incomplete and inadmissible evidence. Lastly, Axis argues that the trial court erred in finding it in bad faith and awarding penalties and attorney fees. Mrs. Gaspard answered the appeal asking for additional attorney fees and an increase in damages and penalties.

## FACTS

On September 4, 2015, LeeAnn and Ewell Gaspard were involved in an automobile accident at the intersection of MacArthur Drive and Coliseum Boulevard in Alexandria, Louisiana, when Ashley Robinson attempted to switch lanes and collided with the Gaspard vehicle. Mrs. Gaspard, who was the passenger in the vehicle driven by her husband, was injured and was transferred to the Rapides Regional Medical Center emergency room. Following the accident, she experienced back, neck, and major hip pain.

Ms. Robinson's vehicle was covered by insurance issued by USAA Garrison Property and Casualty Insurance Company with limits of $25,000.00 for any one person for an accident. On May 10, 2016, Mrs. Gaspard settled her claim with Garrison Insurance Company for $25,000.00, specifically reserving her rights to any UM coverage.

The vehicle the Gaspards were travelling in was owned by Linwell Enterprises and covered by insurance issued by Axis Surplus Insurance Company, through its agent, Strickland General Agency of LA, Inc. On May 17, 2016,

counsel for Mrs. Gaspard sent a letter of representation by email to Strickland General Agency, who sets up the claim for Axis, requesting an unconditional tender of the UM limits under the policy explaining that the policy limits of $25,000.00 of liability insurance had been tendered. Attached to the email were copies of the accident report, the Axis policy declarations page, the settlement with Ms. Robinson and Garrison Insurance Company, affidavits of no other insurance, Mrs. Gaspard's medical records and medical bills, and estimated surgery costs. In response, Mrs. Gaspard's attorney's office received a read receipt verifying that the email was received.

On June 3, 2016, Katie Johns emailed a request to the attorney's office for a copy of the title or bills of sale to show ownership of the vehicle. She attached a letter to the email informing them that she was an authorized claims examiner with York Risk Services Group, an authorized claims administrator for Axis, and she was assigned to the Gaspards' case. She stated Linwell's UM coverage under the Axis policy was in the amount of $30,000.00. She then stated that, "We are not aware as to any coverage defenses at this time. We are still investigating. We will amend this statement if or when a coverage issue arises." The declarations and application page of the Axis policy was also attached to the email.

That same day, the attorney's office sent a copy of the accident report to Ms. Johns, specifically noting the VIN number of the vehicle and indicating that Linwell was the owner of the vehicle. On June 10, 2016, a bill of sale was attached to an email to Ms. Johns indicating that the vehicle had been sold. On June 21, 2016, Ms. Johns sent an email requesting that York be given time to review the extensive medical records.

On July 5, 2016, the Gaspards filed suit against USAA[1], Ms. Robinson, Axis, and Linwell. On July 29, 2016, Ms. Robinson and Garrison Insurance Company answered the petition, stating that any claims that Mrs. Gaspard had against them were settled so that she no longer had a right of action against them. A hearing on a default judgment against Axis was held on September 16, 2016.

Following the hearing, the trial court determined that the evidence clearly established that Mrs. Gaspard's damages exceeded $55,000.00, the amount tendered as the liability limits by Garrison Insurance Company ($25,000.00) and the amount of UM coverage under Axis's policy ($30,000.00). The trial court further found that Axis received sufficient notice of the claim and was arbitrary and capricious in failing to tender payment to Mrs. Gaspard. The trial court awarded $15,000.00 as additional damages pursuant to La.R.S. 22:1892 and La.R.S. 22:1973. Additionally, the trial court awarded penalties in the amount of $30,000.00 and attorney fees in the amount of $20,000.00. The trial court also awarded expert witness fees to Dr. Robert Rush in the amount of $750.00 and to Phillip Hunter in the amount of $750.00.

Axis filed the present appeal alleging the trial court committed several errors. Axis first argues that the trial court erred in rendering a default judgment in excess of its jurisdictional limits. Axis's next argument is that the trial court erred in rendering a default judgment against it when the insurance policy introduced into evidence was incomplete, hearsay, and a proper foundation was not laid for its admission. Axis also argues that the trial court erred in rendering a default judgment based on inadmissible evidence. Finally, Axis argues that the trial court

---

[1] As observed from the insurance declarations page and settlement documents, Garrison Property and Casualty Insurance Company is a subsidy of USAA Insurance Company. In the petition, only USAA was listed as a defendant.

erred in finding it in bad faith when the record evidence revealed conflicting medical opinions on whether Mrs. Gaspard had a labral tear necessitating surgery.

## JURISDICTIONAL LIMITS

Axis argues that the claims of Mrs. Gaspard exceeded the jurisdictional limits of the Alexandria City Court. Axis claims that even though Mrs. Gaspard settled with Garrison Insurance Company and Ms. Robinson, she still filed suit against them. She also filed suit against Linwell. Citing *Swayze v. State Farm Mutual Automobile Insurance Co.*, 14-1899 (La. 6/30/15), 172 So.3d 1026, Axis argues that Mrs. Gaspard still had pending claims against Garrison Insurance Company, Ms. Robinson, and Linwell when the default judgment was entered. This resulted in Ms. Gaspard seeking combined insurance amount of $55,000.00, which is greater than the trial court's $50,000.00 jurisdictional limit as established by La.Code Civ.P. art. 4843(H). For this reason, Axis argues the trial court lacked subject matter jurisdiction because Mrs. Gaspard's claim exceeded its jurisdictional limit. Axis further argues that Mrs. Gaspard failed to stipulate the amount sought did not exceed the trial court's jurisdictional limit.

*Swayze* involved an automobile accident case filed in the Monroe City Court, which has a $30,000.00 jurisdictional limit. Prior to trial, the plaintiff settled with the tort feasor and the tort feasor's insurer for the policy limits of $25,000.00. The UM insurer made a voluntary medical payment of $5,000.00 and moved for summary judgment arguing that city court's jurisdictional limit was now exhausted. Agreeing with the plaintiff that settlement with the defendants should not be considered in determining the jurisdictional amount available for an award against the UM insurer, the city court eventually entered a judgment of $22,700.04 against the UM insurer. On appeal, the appellate court reversed the city court, finding that

the city court did not have jurisdiction of the matter because the amount in dispute, which included the settlement amount, exceeded the city court's jurisdictional limit of $30,000.00. *Swayze v. State Farm Mut. Auto. Ins. Co.*, 49,079 (La.App. 2 Cir. 6/4/14), 142 So.3d 369. The UM insurer appealed to the supreme court, which addressed the issue.

The supreme court first looked to La.Code Civ.P. arts. 4 and 4841, both of which state that the "amount in dispute" is determined by the "amount demanded" by the plaintiff in the petition. However, the supreme court further recognized that La.Code Civ.P. art 5 provides that "'[w]hen a plaintiff reduces his claim on a single cause of action to bring it within the jurisdiction of a court and judgment is rendered thereon, he remits the portion of his claim for which he did not pray for judgment, and is precluded thereafter from demanding it judicially.'" *Swayze*, 172 So.3d at 1030 (alteration in original).

The supreme further observed that a time frame was not imposed by the legislature in La.Code Civ.P. arts. 4, 4841, and 4843 for determining the "amount in dispute" or the "amount demanded" by a plaintiff for the purposes of jurisdiction. *Id*. at 1032. The supreme court looked to its decision in *Benoit v. Allstate Insurance Co.*, 00-424 (La. 11/28/00), 773 So.2d 702, which addressed the monetary threshold for a party's right to a trial by a jury. In *Benoit*, 773 So.3d at 708, the supreme court held "that the right to a jury trial is determined by 'the value of the plaintiff's cause of action against the defendant or defendants who are **before the court at the time the right to a jury trial is litigated**.'" *Swayze*, 172 So.2d at 1032.

The supreme court then went on to hold that:

In light of the legislative trends, observed in *Benoit*, that "expand the jurisdiction of courts of limited jurisdiction" and "generally . . . limit the availability of the more costly methods of litigating claims and . . . encourage more efficient methods," we interpret the "amount in dispute" referred to in La. C.C.P. arts. 4, 4841, and 4843 as the "amount in dispute" relative to, or the "amount demanded" from, the defendant or defendants who are before the court at the time that jurisdiction is determined. . . . Upon settlement in this case, the "amount in dispute" in plaintiff's action no longer included the amount originally demanded from the tortfeasor's liability insurer as that amount was no longer part of plaintiff's demand, was no longer an amount at risk in the litigation, and could no longer be awarded by judgment.

*Id.* at 1032-33 (footnotes omitted).

In the present case, Mrs. Gaspard's attorney announced prior to the hearing that her action against USAA (Garrison Insurance Company) was dismissed because the matter was settled and the only claim before the trial court was her action against Axis. While there had been no formal dismissal filed, it is clear that the "amount in dispute" no longer included the claim against Ms. Robinson and Garrison Insurance Company. Furthermore, La.Civ.Code art. 3080 provides that "[a] compromise precludes the parties from bringing a subsequent action based upon the matter that was compromised." Therefore, when Mrs. Gaspard filed suit against Garrison and its insured, she could not demand any more damages from them and damages could not be awarded by the trial court, so there was no value in her cause of action against them.

All that remained at the time of the hearing on the default judgment was Mrs. Gaspard's claim against Linwell and Axis for its UM policy limits of $30,000.00, which did not exceed the jurisdictional limits of the Alexandria City Court. As in *Swayze*, 172 So.3d 1026, Mrs. Gaspard's only claim at the time of the hearing was against Axis. For these reasons, we find the Alexandria City Court had subject matter jurisdiction over Mrs. Gaspard's claim.

6

## INSURANCE POLICY

Axis further argues that the trial court erred in rendering a default judgment against it because the Axis insurance policy introduced into evidence was incomplete, hearsay, and no foundation was laid to admit it. Axis claims that the policy was missing the second page of the Common Policy Declarations, pages one to three of the Garage Coverage Form Auto Dealers Supplementary Schedule, and the Garage Coverage Form terms and conditions. Mrs. Gaspard argues that Axis failed to comply with a court order requiring production of the policy, and thereby, the policy should be deemed admitted. She further claims that the portions of the policy admitted into evidence, along with correspondence from Axis's claims adjuster, supplies the necessary proof of coverage for the accident.

Pursuant to La.Code Civ.P. art. 1701, if a defendant fails to answer within the time prescribed by law, a judgment of default may be entered against him. "In reviewing default judgments, the appellate court is restricted to determining the sufficiency of the evidence offered in support of the judgment." *Arias v. Stolthaven New Orleans, L.L.C.*, 08-1111, p. 5 (La. 5/5/09), 9 So.3d 815, 818. "This determination is a factual one governed by the manifest error standard of review." *Id.*

"A judgment of default must be confirmed by proof of the demand that is sufficient to establish a prima facie case and that is admitted on the record prior to confirmation." La.Code Civ.P. art. 1702(A). "The elements of a prima facie case are established with competent evidence, as fully as though each of the allegations in the petition were denied by the defendant." *Arias*, 9 So.3d at 820. "In other words, the plaintiff must present competent evidence that convinces the court that it is probable that he would prevail at trial on the merits." *Id.* "[I]nadmissible

evidence, except as specifically provided by law, may not support a default judgment even though it was not objected to because the defendant was not present." *Id.*

"[W]hen an obligation is based on a writing, prima facie proof of the obligation requires introduction of the writing into evidence." *Arias*, 9 So.3d at 822. When an insurance policy is the "principal basis" for the claim against an insurance carrier in securing a default judgment, it must be introduced into evidence. *Id.* "[T]he elements of a prima facie case are established with competent evidence that convinces the court that it is probable that the plaintiff would prevail at trial on the merits." *Id.* at 823.

When Mrs. Gaspard filed her petition for damages, she requested an order for both insurance companies to produce copies of the policies covering the vehicles involved in the accident. An order to produce the insurance policies within thirty days was attached to the petition and signed by the trial court on July 7, 2016. The petition and order were served on Axis on July 18, 2016, through its agent for service of process, the Office of the Louisiana Secretary of State.

The methods for obtaining discovery are provided by La.Code Civ.P. art. 1421, as follows:

> Parties may obtain discovery by one or more of the following methods: depositions upon oral examination or written questions; written interrogatories; production of documents or things or permission to enter upon land or other property, for inspection and other purposes; physical and mental examinations; request for release of medical records; and requests for admission. Unless the court orders otherwise under Article 1426, the frequency of use of these methods is not limited.

If there is a question of liability under an insurance policy, an insurance policy is discoverable pursuant to La.Code Civ.P. art. 1423, and production of the

policy can be obtained pursuant to La.Code Civ.P. arts. 1461 and 1462. If a party fails to respond to the request for production, the requesting party may move for an order to compel discovery pursuant to La.Code Civ.P. art. 1469. La.Code Civ.P. art. 1462(B)(1). "The party seeking the order to compel discovery must provide supporting proof to show that the discovery sought is within the scope of these articles, and a motion to compel should not be granted ex parte." *Fuller v. Wal-Mart Stores, Inc.*, 519 So.2d 366, 371 (La.App. 2 Cir. 1988)(citing La.Code Civ.P. art. 963).

Mrs. Gaspard did not first file a request for production of the insurance policy so she was not entitled to an order compelling production of the insurance policy. However, the order was served on Axis through its agent for service of process, and Axis never filed a motion to challenge this order.

In *Succession of Rock v. Allstate Life Insurance Co.*, 340 So.2d 1325 (La.1979), the supreme court held that the failure of the insurer to timely respond to a request for admission resulted in the policy deemed admitted. The supreme court in *Arias*, 9 So.3d 815, further discussed the reason behind this jurisprudential rule. The supreme court first observed that discovery was propounded to one defendant and not the other and noted that failure of one party to respond to discovery, or an inadequate response, which resulted in an admission of facts did not "result in an admission of facts to the detriment of another party." *Id.* at 824-25. The supreme court then explained that the failure to respond to interrogatories required the moving party to seek an order to compel. Then, "[i]f the party fails to comply with the court order compelling discovery, the trial court may, among other options, thereafter order that the matters subject to the motion be taken as established." *Id.* at 825. The supreme court then observed that when a request for

admission is made, the matter is admitted unless the party timely provides a written answer or objection.

In the present case, we have an order of the court that was served upon Axis to produce the insurance policy. Although Mrs. Gaspard did not follow the proper procedure before she obtained the order, Axis never objected to the order in any manner. Therefore, since Axis failed to comply with court order to produce the insurance policy, we find the policy deemed admitted.

### MEDICAL RECORDS

Axis claims that Mrs. Gaspard failed to submit certified copies of medical records and bills, and therefore, the medical records and bills are hearsay and insufficient to establish a prima facie case. It claims that Mrs. Gaspard's introduction of medical bills into the record was inadmissible hearsay and improperly admitted into evidence.

Louisiana Revised Statutes 13:3714(A) provides for the admission of medical records as follows:

> Whenever a certified copy of the chart or record of any hospital, signed by the administrator or the medical records librarian of the hospital in question, or a copy of a bill for services rendered, medical narrative, chart, or record of any other state health care provider, as defined by R.S. 40:1299.39(A)(1) and any other health care provider as defined in R.S. 40:1299.41(A), certified or attested to by the state health care provider or the private health care provider, is offered in evidence in any court of competent jurisdiction, it shall be received in evidence by such court as prima facie proof of its contents, provided that the party against whom the bills, medical narrative, chart, or record is sought to be used may summon and examine those making the original of the bills, medical narrative, chart, or record as witnesses under cross-examination.

Part of the confusion stems from the fact that a complete copy of the medical records introduced into evidence was missing from the record when filed in this court. The trial court supplemented the record with the medical records, which

10

were introduced at the hearing as Exhibit 15, after the briefs were filed. All of the medical records were certified except for the records from Alexandria Therapeutic Clinic, MRI Imaging Systems, and Dr. George Williams. Also, Dr. Robert Rush testified at the hearing on the default judgment.

Dr. Rush, an occupational medicine specialist, testified that he treated Mrs. Gaspard after the accident. He explained that Mrs. Gaspard was originally treated at Rapides Regional Hospital following the accident. Mrs. Gaspard then went to Dr. Kelly Faircloth, a chiropractor, for about three months. Dr. Faircloth referred Mrs. Gaspard to Dr. George Williams, an orthopedic surgeon, who ordered an MRI. The MRI indicated that Mrs. Gaspard suffered with a herniation without compromise at T11-T12 and a disc bulge at L4-5. She also received physical therapy at Agilus Health. Dr. Rush further explained that Mrs. Gaspard saw Dr. Courtney Richter, a dentist, for TMJ problems.

After his initial examination on February 8, 2016, Dr. Rush diagnosed Mrs. Gaspard with cervical, thoracic, and lumbar strain; lumbar disc disease; right TMJ dysfunction; right sacroiliac strain; right piriformis syndrome; and right hip injury. He continued her therapy at Agilus Health. He prescribed a Medrol dose pack, which is a steroid and anti-inflammatory medication, to be followed with Relafen, a non-steroid anti-inflammatory. He also prescribed a muscle relaxer and told her to use a heating pad.

Dr. Rush next saw Mrs. Gaspard on February 22, 2016. She was experiencing neck pain, still having right hip issues, and continuing to present with a positive femoral acetabular impingement test on the right hip. Mrs. Gaspard also suffered with cervical and lumbar tightness and right sacroiliac tenderness. Dr. Rush ordered a MR arthrogram of the right hip, where dye is placed into the hip

joint to get a picture of the labrum. Dr. Rush explained that the initial reading by the radiologist did not show a labral tear, which can be missed with an MR arthrogram sometimes. He then referred Mrs. Gaspard to Dr. Brett Cascio, an orthopedic surgeon, who reviewed the films and saw a labral tear.

Dr. Rush further testified that Dr. Cascio noted that conservative management of Mrs. Gaspard's condition failed so that surgery was necessary. Dr. Cascio's report from his April 21, 2106 exam of Mrs. Gaspard indicates that she needs arthroscopy of the right hip with labral repair versus debridement, psoas tendon release, acetabuloplasty, femoral plasty as needed, and ligamentum teres debridement.

We find that Mrs. Gaspard established a prima facie case that she was injured as a result of the accident through her own testimony, Dr. Rush's testimony, and by the certified medical records.

Mrs. Gaspard introduced a copy of all medical bills as Exhibit 14 at the hearing. At the time of the hearing, her bills totaled $17,657.73. Future surgery costs were estimated at $45,683.48. Some of the bills were also included as part of the certified medical records.

In *Smith v. Clement*, 01-87, p. 7 (La.App. 3 Cir. 10/3/01), 797 So.2d 151, 157, *writs denied*, 01-2878, 01-2982 (La. 1/25/02), 807 So.2d 249, 843, this court in reviewing a default judgment held that "[w]hen a plaintiff claims to have incurred medical expenses and those claims are supported by a bill, the proof is sufficient, unless there is contradictory evidence or reasonable suspicion that the bill is unrelated to the accident." In *Smith*, the bills were introduced during the plaintiff's testimony, and the court's review of the bills established they were related to her claim against the doctor defendant.

The court in *Hall v. Folger Coffee Co.*, 02-920, 02-921 (La.App. 4 Cir. 10/1/03), 857 So.2d 1234, *writ denied*, 03-1756 (La. 10/17/03), 855 So.2d 762, *writ denied*, 03-3416 (La. 6/25/04), 876 So.2d 827, followed this court's reasoning by allowing the introduction of medical bills in support of the plaintiff's testimony as to the fact that the medical expenses and costs were incurred.

Colleen Stehr, an employee of Mrs. Gaspard's attorney, testified at the hearing that she personally worked on Mrs. Gaspard's case. In preparation for trial, she stated that she gathered updated medical bills of past expenses as well as future surgery costs. She identified that the bills as Exhibit 14.

After examination of the record, we find Mrs. Gaspard sufficiently established her entitlement to all the medical expenses awarded by the trial court. Testimony at the hearing from both Dr. Rush and Ms. Stehr, in addition to the certified medical records, proved that Mrs. Gaspard incurred both the medical expenses and the need for future surgery as a result of the automobile accident.

## BAD FAITH

Axis next argues that the trial court erred in finding it was in bad faith in the handling of Mrs. Gaspard's claim. Axis argues that the evidence failed to establish that it was presented with satisfactory proof of loss, as there was no evidence demonstrating what medical or billing records were actually provided to it by email.

An insurer is liable for penalties and attorney fees when it fails to timely pay a claim after receiving satisfactory proof of loss when that failure to pay is arbitrary, capricious or without probable cause pursuant to La.R.S. 22:1892 and La.R.S. 22:1973.

Louisiana Revised Statutes 22:1892 provides, in pertinent part:

13

(2) All insurers issuing any type of contract, other than those specified in R.S. 22:1811, R.S. 22:1821, and Chapter 10 of Title 23 of the Louisiana Revised Statutes of 1950, shall pay the amount of any third party property damage claim and of any reasonable medical expenses claim due any bona fide third party claimant within thirty days after written agreement of settlement of the claim from any third party claimant.

. . . .

B. (1) Failure to make such payment within thirty days after receipt of such satisfactory written proofs and demand therefor or failure to make a written offer to settle any property damage claim, including a third-party claim, within thirty days after receipt of satisfactory proofs of loss of that claim, as provided in Paragraphs (A)(1) and (4) of this Section, respectively, or failure to make such payment within thirty days after written agreement or settlement as provided in Paragraph (A)(2) of this Section when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of fifty percent damages on the amount found to be due from the insurer to the insured, or one thousand dollars, whichever is greater, payable to the insured, or to any of said employees, or in the event a partial payment or tender has been made, fifty percent of the difference between the amount paid or tendered and the amount found to be due as well as reasonable attorney fees and costs. Such penalties, if awarded, shall not be used by the insurer in computing either past or prospective loss experience for the purpose of setting rates or making rate filings.

Louisiana Revised Statutes 22:1973 provides, in pertinent part:

A. An insurer, including but not limited to a foreign line and surplus line insurer, owes to his insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both. Any insurer who breaches these duties shall be liable for any damages sustained as a result of the breach.

B. Any one of the following acts, if knowingly committed or performed by an insurer, constitutes a breach of the insurer's duties imposed in Subsection A of this Section:

. . . .

(5) Failing to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory

14

proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause.

. . . .

C. In addition to any general or special damages to which a claimant is entitled for breach of the imposed duty, the claimant may be awarded penalties assessed against the insurer in an amount not to exceed two times the damages sustained or five thousand dollars, whichever is greater. Such penalties, if awarded, shall not be used by the insurer in computing either past or prospective loss experience for the purpose of setting rates or making rate filings.

Louisiana Revised Statutes 22:1973, providing that an insurer must pay a claim within sixty days, supersedes La.R.S. 22:1892, providing that an insurer must pay a claim within thirty days, because it provides the greater penalty, and a plaintiff cannot recover penalties under both statutes. *Leland v. Lafayette Ins. Co.*, 11-475 (La.App. 3 Cir. 11/9/11), 77 So.3d 1078, *writ denied*, 11-2714 (La. 2/17/12), 82 So.3d 285.[2] However, since La.R.S. 22:1973 does not provide for attorney fees, a plaintiff who establishes entitlement to recovery under La.R.S. 22:1892 can recover an attorney fee thereunder. *Id.*

Whether a refusal to pay an insured within sixty days of satisfactory proof of loss is arbitrary, capricious, or without probable cause and warrants granting statutory penalties to an insured, takes into account what facts are known by the insurer at the time of its action. *Hudson v. AIG Nat. Ins. Co.*, 10-63 (La.App. 3 Cir. 6/2/10), 40 So.3d 484. The trial court's decision on this issue is a factual issue subject to the manifest error standard of review. *Id.*

---

[2]Louisiana Revised Statutes 22:1220 and 22:658, which were the statutes at issue in *Leland*, 82 So.3d 285, were redesignated La.R.S. 22:1973 and La.R.S. 22:1892, respectively, pursuant to 2008 La. Acts No. 415, § 1, effective January 1, 2009.

"A 'satisfactory proof of loss' . . . is that which is sufficient to *fully apprise* the insurer of the insured's claim." *McDill v. Utica Mut. Ins. Co.*, 475 So.2d 1085, 1089 (La.1985).

> To establish a "satisfactory proof of loss" of an uninsured/underinsured motorist's claim, the insured must establish that the insurer received sufficient facts which fully apprise the insurer that (1) the owner or operator of the other vehicle involved in the accident was uninsured or underinsured; (2) that he was at fault; (3) that such fault gave rise to damages; and (4) establish the extent of those damages.

At the hearing to confirm the default judgment, Mrs. Gaspard introduced the correspondence between her counsel and Axis into the record. An email was sent on May 17, 2016, to John Lange, general counsel, for Strickland General Agency. Ms. Stehr explained that Strickland set up the claim for Axis. She testified as to the supporting documentation that was sent at the time which included the accident report, the Garrison declaration sheet on liability, affidavits of no other insurance, copy of the settlement check and release of all claims, her medical records, medical bills, and estimated costs of surgery. A read receipt was also introduced into evidence which indicated that the email was received.

On June 3, 2016, Mrs. Gaspard's attorney received an acknowledgment from York Risk Services Group, the claims administrator for Axis. It disclosed its policy defenses and indicated it was not aware of any coverage defenses at the time but was still investigating the matter. The claims adjuster also requested the title or bill of sale to show ownership of the vehicle on the date of the accident. On that same date a fax was sent to the claims adjuster with the accident report and VIN number of the vehicle referenced. Proof was also introduced indicating that this fax was sent. On June 10, 2016, a bill of sale was emailed to York indicating that the vehicle was sold on December 21, 2015.

16

On June 21, 2106, York emailed Mrs. Gaspard's attorney requesting "a reasonable time to review your client's extensive records." An attached letter stated:

> Be advised that we are in receipt of your $30,000.00 demand with a copy of your client's medicals for review. Note that your demand is the first notice of the above referenced loss. Please be advised that at this time we are in the process of reviewing your demand and your client's medicals. Accordingly, we are requesting an extension of 30 days to respond to your demand.

The letter also had a place to sign and date if agreeable. It was never signed.

Suit was filed the morning of July 5, 2016. On July 19, 2016, York emailed Mrs. Gaspard's attorney offering to settle the matter for the full UM policy limits of $30,000.00. The letter itself was dated June 22, 2016. Mrs. Gaspard's attorney emailed a letter that same day noting that he did not receive the letter until July 19 and requesting an unconditional tender since in excess of sixty days from due proof of loss had passed. He then offered to discuss the settlement of penalties and attorney fees. The same letter that York emailed Mrs. Gaspard's attorney offering to settle the case was also mailed and postmarked July 19, 2016.

In *Wallace v. State Farm Mutual Automobile Insurance Co.*, 36,099. p. 13 (La.App. 2 Cir. 6/14/02), 821 So.2d 704, 713, the second circuit observed that unconditional payments on a UM policy "completely undermine[d]" the UM insurer's claim that it never received "satisfactory proof of loss."

In the present case we have written proof that York received "extensive medicals." Furthermore, it made an offer to settle for the full UM policy limits. We find that the trial court did not commit manifest error in finding that Axis received satisfactory proof of loss.

Axis also argues that the trial court erred in finding it in bad faith when the evidence in the record revealed conflicting medical opinions on whether Mrs. Gaspard had a labral tear necessitating surgery. The radiologist's report stated, "No discrete labral tear is identified." Dr. Cascio's report recognized this but disagreed and found that there was a superior labral tear. He further noted that she had not had relief from her symptoms for seven months, and he recommended surgery. There was no other medical evidence disputing Dr. Cascio's opinion nor was there communication from Axis that it questioned Dr. Cascio's opinion that surgery was necessary or a request for an independent medical examination. We find no manifest error in the trial court's finding that Axis acted arbitrarily and capriciously and was in bad faith.

## ATTORNEY FEES

Axis complains that the $20,000.00 awarded by the trial court in attorney fees is excessive. It argues that the amount is excessive because there was significant deficiencies in the evidence and testimony put forth at trial and counsel had a limited appearance in court on this matter.

An assessment of attorney fees under La.R.S. 22:1892 "should be based on the services needed to effect recovery, the degree of professional skill and ability exercised, the volume of work performed, the time devoted to the case, and the amount in controversy." *Geraci v. Byrne*, 06-58, p. 8 (La.App. 5 Cir. 6/28/06), 934 So.2d 263, 268, *writ denied*, 06-1850 (La. 11/9/06), 941 So.2d 42. A trial court has much discretion in setting attorney fees which will not be modified on appeal absent an abuse of discretion. *Id*.

Phillip Hunter, an attorney, testified at the hearing regarding the work performed by Mrs. Gaspard's counsel, Eugene Cicardo, in preparing for trial. In

18

its brief, Axis complains that Mr. Hunter was not properly tendered as an expert or accepted as an expert and should not have been awarded expert fees because his testimony was unnecessary based on the trial court's experience in calculating an award of attorney fees.

Louisiana Revised Statutes 13:3738 provides:

> In any claim for attorney fees, whether by main, incidental demand, or rule nisi, or otherwise, the court shall allow the introduction of all admissible evidence, in accordance with law, including real and documentary evidence and testimony, and shall allow oral and written argument in support thereof, and such evidence, testimony and argument shall be considered by the court in rendering judgment on the demand.

This statute has been interpreted as permitting a trial court to use expert testimony in determining appropriate attorney fees to be awarded. *State, Dept. of Transp. and Dev. v. Williamson*, 585 So.2d 614 (La. App. 2 Cir.), *writs granted*, 590 So.2d 70, 71 (La.1991), *affirmed as amended in part and reversed in part*, 597 So.2d 439 (La.1992). Furthermore, La.R.S. 13:3666 provides for the payment of reasonable compensation to expert witnesses and, when read in conjunction with La.R.S. 13:3738, entitles attorneys who testify as expert witnesses to an award of expert witness fees. *Id*.

On initial examination of Mr. Hunter, Mr. Cicardo inquired as to Mr. Hunter's credentials before examining him in particular about the case. Mr. Hunter also testified as to his familiarity with Mr. Cicardo's work ethic in general. Mr. Hunter stated that he reviewed the work performed in the case. We find that the trial court properly considered Mr. Hunter's testimony, which was not objected to.

Mr. Hunter explained that setting up an uninsured motorist claim is one of the most meticulous and time-consuming things in the automobile practice arena,

19

as it involves a lot more work.  Mr. Hunter stated that Mr. Cicardo performed what amounted to trial preparation in submitting proof of loss to the insured.  He also opined that Mr. Cicardo did as much work in this case as a person who would try a case on the merits.  In Mr. Hunter's opinion, $20,000.00 was an appropriate amount as an attorney's fee.

Ms. Stehr also testified that lot of time was spent in working on the UM part of the case.  She testified that well over 100 hours was put into the UM portion of the case.

We find no abuse of discretion in the trial court's award of $20,000.00 in attorney fees.  The award was supported by the evidence and testimony in the record.

Mrs. Gaspard filed an answer to the appeal asking for an increase in attorney fees.  When a party requests additional attorney fees on appeal, an increase in attorney fees is generally awarded when the defendant appeals, obtains no relief, and the appeal has required more work on the part of the requesting party's attorney. *Mason v. Shelter Mut. Ins. Co.*, 16-135 (La.App. 3 Cir. 12/28/16), 209 So.3d 860. We find an award of additional attorney fees is appropriate and award Mrs. Gaspard $2,500.00 in additional attorney fees.

## DAMAGES

Mrs. Gaspard also requested additional damages and penalties, arguing that Axis continues to refuse to tender any sum in this case following the trial court judgment.  She has cited no law which would allow this court to award additional damages and penalties under La.R.S. 22:1973.

Pursuant to La.Code Civ.P. art. 2164 (emphasis added), an "appellate court shall render any judgment which is just, legal, and proper **upon the record on**

20

**appeal."** Facts which are contained solely in briefs or argument of counsel are not considered record evidence. *Abushanab v. St. Charles Gaming Co., Inc.*, 12-155 (La.App. 3 Cir. 11/7/12), 103 So.3d 1197, *writs denied*, 12-2614, 12-2651 (La. 1/25/13), 105 So.3d 720, 723. Therefore, it is not proper for this court to award damages or penalties based on facts which occurred after the trial court judgment and contained solely in Mrs. Gaspard's brief.

For the reasons set forth in this opinion, we amend the judgment of the trial court to award additional attorney fees in the amount of $2,500.00. In all other respects, the judgment of the trial court is affirmed. Costs of this appeal are assessed to Axis Surplus Insurance Company.

**AFFIRMED AS AMENDED.**

This opinion is NOT DESIGNATED FOR PUBLICATION. Uniform Rules—Courts of Appeal, Rule 2–16.3.